**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **QUAMONTAE J. JOHNSON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civ. No. MJM-22-2372** |
| | * | |
| **JEFFERY NINES, ET AL.,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * *

# MEMORANDUM OPINION

Quamontae Johnson ("Plaintiff") brings this suit against former Warden Jeffery Nines, Security Chief Ronald Stotler,[1] Sergeant Joshua Vanskiver,[2] Officer Cody Gilpin, Officer Benjamin Crowe, Warden Keith Arnold (collectively, "Individual Defendants"), and the Maryland Division of Correction (collectively, "Defendants"). He alleges violations of his constitutional rights, battery, and civil conspiracy in connection with an alleged assault at North Branch Correctional Institution ("NCBI") on August 31, 2021, and events thereafter.

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment. ECF 51.[3] The motion is fully briefed; a hearing is not necessary to resolve it. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' Motion to Dismiss will be granted in part and denied in part.

---

[1] The operative Second Amended Complaint refers to this defendant as "Chief Scottland." ECF 37 at 1. Defendants indicate that "Stotler" is the defendant's correct surname. ECF 51-1 at n.1.

[2] The Second Amended Complaint incorrectly spells this defendant's surname as "Vansciver." ECF 37 at 1.

[3] Also pending are Defendants' Motion to Seal Exhibit 6 to ECF 51, ECF 53; Defendants' Motion for Extension of Time to File Reply, ECF 74; and Plaintiff's Motion for Leave to File Surreply, ECF 81. For reasons explained below, Defendants' motions to seal and for extension of time shall be granted, and Plaintiff's motion to file a surreply shall be denied.

# I. BACKGROUND

## A. Facts

Plaintiff alleges the following facts in his Second Amended Complaint.[4]

Plaintiff is incarcerated at NBCI, in the custody of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). ECF 37 ¶ 6. Defendant Nines is the former Warden of NBCI. *Id.* ¶ 7. As of the date the Second Amended Complaint was filed, Defendant Arnold was the current Warden of NBCI. *Id.* ¶ 8. Defendant Stotler was the Chief of Security at either Western Correctional Institution ("WCI") or NBCI during the relevant time period. *Id.* ¶ 9. Defendants Vanskiver, Crowe, and Gilpin were correctional officers who worked at either WCI or NBCI during the relevant time period. *Id.* ¶¶ 10–12. Defendant Maryland Division of Correction ("the Division") is a division of DPSCS that is responsible for managing NBCI and other correctional facilities. *Id.* ¶ 13.

On August 31, 2021, Plaintiff was taken from his cell at NCBI to another room, where Sgt. Vanskiver and Officer Gilpin were present. *Id.* ¶¶ 15, 17. Plaintiff noticed that an object resembling a brown folder had been placed to block the surveillance camera. *Id.* ¶ 16. Plaintiff was handcuffed with excessively tight handcuffs and restrained in a seat. *Id.* ¶ 19. Sgt. Vanskiver and Officer Gilpin proceeded to assault Plaintiff physically and sexually. *Id.* ¶ 17. Sgt. Vanskiver slapped Plaintiff in the face and squeezed his face. *Id.* ¶ 18. He also squeezed Plaintiff's hand "with excessive force" and stated, "You like killing white women." *Id.* ¶ 19. The officers pulled down Plaintiff's pants and squeezed his penis tightly. *Id.* ¶ 19. One officer then sprayed mace into Plaintiff's pants and onto his genital area. *Id.* Plaintiff urinated on himself due to the trauma and pain from the assault.

---

[4] Because the Court assesses the legal sufficiency of the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and declines to consider matters outside that pleading, *see infra* Part V, it assumes the truth of all well-pleaded allegations set forth therein, *see Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

*Id.* ¶ 20. He reported this incident to then-Warden Nines and Security Chief Stotler but was told that the officers' actions were appropriate; Nines and Stotler took no additional measures to protect Plaintiff. *Id.* ¶ 22.

After Plaintiff filed administrative complaints and grievances regarding the August 31, 2021, assault, "Defendants" labeled him a "snitch" and distributed materials related to his criminal case to gang members for the purpose of encouraging violence against him. *Id.* ¶¶ 24, 26, 31, 38. "Defendants" sent inmates to physically attack or mace Plaintiff and facilitated or encouraged stabbings by providing information or access to hostile inmates. *Id.* ¶¶ 35, 38. Plaintiff was stabbed by gang members on December 23, 2021. *Id.* ¶ 27. The stabbing occurred because officers, including Officer Crowe, provided "access or information" to the assailants. *Id.* About one year after the August 31, 2021, assault, officers called Plaintiff a "snitch" and used mace on him as a "celebration" of the prior assault. *Id.* ¶ 25. Additionally, "Defendants" repeatedly humiliated Plaintiff to isolate him and make him a target for abuse. *Id.* ¶ 32. They paid or encouraged inmates to throw feces at Plaintiff, *id.* ¶ 32, and forced Plaintiff to bark like a dog in front of others, *id.* ¶ 37. Furthermore, Plaintiff was denied adequate medical care and hygiene supplies, including soap and other necessities, and his legal mail was tampered with or withheld. *Id.* ¶¶ 29, 33.

"Defendants" attempted to coerce Plaintiff into dropping his complaints. Defendants, including Sgt. Vanskiver, offered Plaintiff better housing conditions, electronics, and other privileges in exchange for recanting his allegations. *Id.* ¶¶ 28, 34, 40. "Defendants" told Plaintiff that "he was playing a dangerous game" and that he would face further harm if he pursued the grievances against them. *Id.* ¶ 36, 39. After Plaintiff reopened this case and obtained counsel,

"Defendants" renewed their coercion efforts, offering to drop disciplinary actions and provide privileges if Plaintiff recanted his legal claims.[5] *Id.* ¶ 40.

Security Chief Stotler was "notified of each instance of abuse or retaliation but took no action to prevent or stop the harm." *Id.* ¶ 30. NCBI and the Division did not require preservation and retention of surveillance footage, leading to the destruction of video evidence of the August 31, 2021, assault and other incidents. *Id.* ¶¶ 41–42. NCBI and the Division also failed to implement or enforce policies to ensure inmate safety. *Id.* ¶¶ 43–45.

### B. Procedural History

On September 16, 2022, Plaintiff, who was self-represented at the time, initiated this action by filing his original Complaint pursuant to 42 U.S.C. § 1983. ECF 1. He filed an Amended Complaint about two months later, ECF 6, and Defendants filed an Answer on June 23, 2023, ECF 19. On December 15, 2023, the Court issued an Order setting a deadline for the parties to file status reports regarding the need for discovery. ECF 20. After Plaintiff failed to file a timely status report, the Court issued an Order directing Plaintiff to show cause why the case should not be dismissed for Plaintiff's noncompliance. ECF 23. Plaintiff failed to respond, and the Court dismissed the case without prejudice on March 14, 2024. ECF 24.

On January 16, 2025, Plaintiff filed correspondence that the Court construed as a motion to reopen the case, ECF 25, which Defendants did not oppose, ECF 26. In April 2025, the Court issued Orders granting the motion to reopen, ECF 28, and appointing pro bono counsel for Plaintiff, ECF 29.

[5] Plaintiff alleges that these acts occurred in late January 2025. ECF 37 ¶ 40. Although Plaintiff sent correspondence seeking to reopen his case in mid-January, ECF 25, it was not until April 2025 that this case was reopened and Plaintiff was appointed pro bono counsel, ECF 28 & 29.

On March 24, 2026, the Court granted Plaintiff leave to file a Second Amended Complaint and to conduct discovery on the preservation and production of video and audio evidence, as well as related retention policies, concerning certain incidents described in Plaintiff's initial pro se pleadings. ECF 36. The Second Amended Complaint was docketed on the same date and remains Plaintiff's operative pleading in this matter. ECF 37. On June 2, Defendants filed a Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment, ECF 51, and a Motion to Seal Exhibit 6 to the Motion to Dismiss, ECF 53.[6] Plaintiff filed a response in opposition to the Motion to Dismiss on July 2, ECF 66, and Defendants replied on July 30,[7] ECF 78. Plaintiff moved for leave to file a surreply on August 8, ECF 81, which Defendants opposed, ECF 82.

## II. PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

The Court will deny Plaintiff's Motion for Leave to File Surreply in opposition to the motion to dismiss because a surreply is unwarranted in this case. Plaintiff contends that he should be allowed to file a surreply because Defendants' reply brief raises new issues. ECF 81 ¶ 5. Defendants in turn contend that Plaintiff's proposed surreply should be denied because the arguments that they raised in the reply brief were not new; rather, they were responsive to arguments that Plaintiff made in his opposition. ECF 82 at 3–4. The Court agrees with Defendants.

"Surreplies are highly disfavored in this District." *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies are not permitted unless ordered by the court pursuant to Local Rule 105.2(a), and they should be allowed only when the "moving party would otherwise

[6] Additionally, on June 9, Warden Arnold and the Division filed a motion for a protective order to stay discovery against them until the Court rules on Defendants' Motion to Dismiss/for Summary Judgment. ECF 57. The Court entered an Order granting this motion on July 21. ECF 77.

[7] On July 16, Defendants requested a fourteen-day extension to file their reply due to the scope of Plaintiff's response. ECF 74. The Court finds the delay to be justified by good cause and shall grant the motion for extension of time *nunc pro tunc*. *See* Fed. R. Civ. Proc. 6(b).

be unable to contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 550 (D. Md. 2021) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)); *see also Meyer v. DynCorp Int'l, LLC*, Civ. No. GJH-19-3412, 2020 WL 5513436, at *3 (D. Md. Sept. 14, 2020) (denying motion for leave to file surreply where the reply "did not raise new issues that could not have been anticipated beforehand, and instead merely provided additional legal authority and development of its prior arguments[]"). "A party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, Civ. No. RDB-12-2109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing Local Rule 105.2(a)).

A surreply is unwarranted in this case. Defendants argue in their reply in support of their motion to dismiss that the Court should not consider the new factual allegations in Plaintiff's opposition regarding two administrative decisions purportedly attached as exhibits to the opposition; they also state that they could not locate those exhibits. *See* ECF 78 at 5–7. Both of Defendants' points respond to Plaintiff's invocation of the administrative decisions in his opposition. *See* ECF 66 at 15. Although these arguments do not appear in Defendants' initial brief, Defendants "did not deliberately hold arguments back from its original motion in an attempt to spring them on [Plaintiff] when a response could no longer be made; [they] merely argued against those points that [Plaintiff] asserted in [his] opposition." *E.E.O.C. v. Freeman*, 961 F. Supp. 2d 783, 802 (D. Md. 2013). Defendants' next argument—that Plaintiff or his counsel had access to the records attached to the motion—was a response to Plaintiff's contention that the Court should defer ruling on or deny Defendants' alternative summary judgment motion under Rule 56(d) because Plaintiff did not have an adequate opportunity to conduct discovery. *See* ECF 66 at 7–8; ECF 78 at 1–3. Similarly, Defendants' argument that Plaintiff received discovery responses after

filing the opposition responds to Plaintiff's Rule 56(d) contention. *See* ECF 78 at 1. In sum, the Court does not find a surreply to be justified in the circumstances of this case.

For the foregoing reasons, Plaintiff's Motion for Leave to File Surreply, ECF 81, shall be denied, and the Court declines to consider the proposed surreply, ECF 81-1.

## III. DEFENDANTS' MOTION TO SEAL

Defendants move to seal Exhibit 6 to their Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 53. Exhibit 6 contains Plaintiffs' personal medical records from January 1, 2021, through the present. ECF 52. Defendants argue that the Health Insurance Portability and Accountability Act of 1996 and Maryland law protect Plaintiff's medical record from disclosure. ECF 53 ¶ 2. They further argue that alternative methods to sealing, like redaction, would not sufficiently protect confidential information in the medical records. *Id.* ¶ 3. Plaintiff does not oppose the motion.

The public right of access provided by the First Amendment applies to documents attached to a dispositive motion. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). Public access to such documents "may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). As part of its right-of-access analysis, the court must "consider alternatives to sealing the documents" at issue. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Defendants' sealing motion shall be granted. Judges in this District have repeatedly found that the compelling privacy interest in sensitive medical records justifies sealing the records, despite the high bar posed by the presumptive right of public access under the First Amendment.

*See Jones v. Blair Wellness Ctr., LLC*, Civ. No. ADC-21-2606, 2023 WL 4352451, at *16 (D. Md. June 30, 2023) (collecting cases). While the public's interests in access to court records include the public's ability "to monitor the functions of the courts" and "to understand the judicial process itself and the bases or explanations for a court's decision[,]" *Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, Civ. No. TDC-18-3821, 2021 WL 488641, at *4 (D. Md. Feb. 10, 2021) (first quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014), and then quoting *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016)) (citation modified), access to Plaintiff's private, confidential medical records do not significantly advance these interests. The Court finds that compelling governmental interests in protecting the privacy and confidentiality of information contained in Plaintiff's medical records outweigh the public's presumptive right to access Exhibit 6. Sealing the exhibit is a narrowly tailored measure to protect the compelling governmental interests at stake. Alternatives to sealing, such as redaction, are not feasible in this instance because Exhibit 6 consists almost entirely of Plaintiff's private and confidential medical information. Therefore, the Court will grant Defendants' Motion to Seal, and Exhibit 6 shall remain under seal.

## IV. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the Second Amended Complaint with prejudice in its entirety under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Rule 56. ECF 51 & 78. Plaintiff opposes the motion. ECF 66. As explained below, the Rule 12(b)(6) motion shall be granted as to the First Amendment retaliation claims in Count III; the Eighth Amendment failure-to-protect claims against Officer Crowe, Warden Arnold, and the Division in Count IV; the 42 U.S.C. § 1983 supervisory liability claims against Warden Nines and Warden Arnold in Count V; the Maryland common-law battery claims against Warden Nines,

Security Chief Stotler, Officer Crowe, Warden Arnold, and the Division in Count VI; and the civil conspiracy claims against Warden Nines, Security Chief Stotler, Officer Crowe, Warden Arnold, and the Division in Count VII. The Court defers consideration of Defendants' alternative motion for summary judgment to provide a reasonable opportunity for discovery.

**A. Standard of Review**

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" To survive a Rule 12(b)(6) motion, a civil complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In deciding a motion to dismiss, the court "views the facts in the light most favorable to the plaintiff." *Johnson v. United Parcel Serv., Inc.*, Civ. No. JKB-19-1916, 2020 WL 231379, at *1 (D. Md. Jan. 15, 2020) (citing *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are

"integral to the complaint[,]" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted); *accord Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56[,]" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)). When the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to have notice that conversion under Rule 12(d) may occur, and the court need not "notify parties of the obvious." *Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483–84 (4th Cir. 2014). Motions under Rule 56(d) "are 'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions." *McCray*, 741 F.3d at 484 (quoting *Greater Balt. Ctr.*, 721 F.3d at 281).

### B. Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment prohibits suits in federal court against a state, and this immunity applies to state officials sued in their official capacities. ECF 51-1 at 13–14. They contend that, to the extent Plaintiff intended to sue Warden Nines, Warden Arnold,

Security Chief Stotler, and Sgt. Vanskiver in their official capacities, those claims are barred by the Eleventh Amendment. *Id.* Plaintiff counters that the Eleventh Amendment does not apply to his claims against Individual Defendants because he sues them in their "individual and supervisory" capacities, not their official capacities. ECF 66 at 14; *see also* ECF 37 ¶¶ 7–12.

"[T]he Eleventh Amendment does not bar suits against governmental officials sued in their personal capacities[.]" *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 229 (4th Cir. 1997) (citing *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991)). But "the Supreme Court has cautioned that allowing an action to proceed simply because the complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.'" *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 270 (1997)). The test is whether the Second Amended Complaint, to the extent that it sues Individual Defendants in their individual capacities, "nonetheless effectively states a claim against the [State] itself." *Id.* at 195–96. The Fourth Circuit has rejected the idea of applying the *Martin* test to 42 U.S.C. § 1983 claims, explaining that so doing would "undermine the very purpose of [Section] 1983." *Gibbons v. Gibbs*, 99 F.4th 211, 215 (4th Cir. 2024) (quoting *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018)).

Here, there is no dispute that Plaintiff sues Individual Defendants in their personal capacities and not in their individual capacities. *See* ECF 51-1 at 13; ECF 66 at 14. Therefore, the Eleventh Amendment does not bar Plaintiffs' claims against Individual Defendants.

The Eleventh Amendment does, however, bar Plaintiff's Maryland common-law battery claim in Count VI against the Division. The Eleventh Amendment bars state-law claims brought in federal court against a non-consenting State agency or department, regardless of the nature of

the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984). "A waiver of Eleventh Amendment immunity will be found 'only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Palotai v. Univ. of Md. College Park*, 959 F. Supp. 714, 718 (D. Md. 1997) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (internal quotation marks omitted)). Plaintiff identifies no statute or provision of Maryland law suggesting that the State waived sovereign immunity for his state-law claim against the Division, so Eleventh Amendment immunity bars this claim.

Accordingly, the Court shall dismiss with prejudice Count VI as to the Division.

**C. Section 1983 Claims against the Division**

Counts III, IV, and VII of the Second Amended Complaint assert claims under 42 U.S.C. § 1983 for constitutional violations against all Defendants, including the Division. Defendants argue that the Division is not subject to suit under § 1983 because that statute applies only to a "person." ECF 51-1 at 10–11. They argue that the Division is a subunit of the State of Maryland, not a legal person. *Id.* In his opposition, Plaintiff argues that even if the Division is not subject to § 1983, it is a proper defendant for injunction claims under *Ex parte Young*, 209 U.S. 123 (1908). ECF 66 at 12–13. In their reply brief, Defendants contend that *Ex parte Young* allows suit for injunctive relief against officers of a state government, not a state agency. ECF 78 at 4–5.

Section 1983 allows for suit against "[e]very person" who causes a deprivation of a federal right while acting under color of state law. "State agencies are not 'persons' within the meaning of § 1983." *Posey v. Navarro*, Civ. No. DLB-23-3453, 2025 WL 744065, at *3 (D. Md. Mar. 7, 2025) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Division is a state agency. *Moseley v. DOC*, Civ. No. 24-cv-3119-LKG, 2024 WL 4980757, at *1 (D. Md. Dec. 3, 2024). Therefore, Plaintiff cannot state a claim for damages against the Division under § 1983.

Plaintiff's argument that *Ex parte Young* allows him to sue the Division for injunctive relief fares no better. "Under *Ex parte Young*, private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd*, 589 U.S. 248 (2020). The *Ex parte Young* doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought[.]" *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 434 n.8 (4th Cir. 2025).[8]

The Court shall therefore dismiss Counts III, IV, and VII with prejudice as to the Division.

### D. Eighth Amendment Excessive Force and Sexual Abuse

In Counts I and II of the Second Amended Complaint, Plaintiff alleges that Sgt. Vanskiver and Officer Gilpin violated the Eighth Amendment through use of excessive force and sexual assault and abuse, respectively. The parties dispute whether the Second Amended Complaint contains sufficient factual detail to state plausible claims for relief. The Court finds that it does.

The Eighth Amendment prohibits "cruel and unusual punishment," U.S. Const. amend. VIII, and "protects inmates from inhumane treatment and conditions while imprisoned[,]" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation modified). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is

[8] Plaintiff's potential need for discovery of the Division's documents does not waive the Division's immunity. The Division does not need to be a party to this lawsuit for Plaintiff to obtain discovery from it.

applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 37–38. Additionally, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015)).

The Second Amended Complaint alleges plausible Eighth Amendment violations by Sgt. Vanskiver and Officer Gilpin based on the alleged use of excessive force and sexual abuse on August 31, 2021. Plaintiff contends that Sgt. Vanskiver "slapped [him] in the face" and "squeezed [his] face" while he was restrained, ECF 37 ¶¶ 17–18, and that Sgt. Vanskiver and Officer Gilpin "deliberately tightened his handcuffs" and caused him "significant pain," *id.* ¶ 19. Plaintiff further alleges that the officers "pulled down [his] pants," "squeezed his penis tightly," and "sprayed mace directly into his pants and onto his genital area." *Id.* Although the Second Amended Complaint does not attribute every act to a particular officer, it identifies physically and sexually abusive conduct by both Sgt. Vanskiver and Officer Gilpin, describes the specific conduct at issue, and provides temporal and spatial context for the conduct. It also attributes some conduct to Sgt. Vanskiver individually and alleges that both officers participated in the other acts. Plaintiff's allegations support a reasonable inference that both Sgt. Vanskiver and Officer Gilpin engaged in excessive force and sexual abuse against Plaintiff in violation of his Eighth Amendment rights.

Sgt. Vanskiver and Officer Gilpin argue that qualified immunity protects them from personal liability for damages from Plaintiff's claims. ECF 51-1 at 11–13. The doctrine of qualified immunity "bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct

was clearly established at the time.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)). Only one of these questions must be resolved in favor of the official for qualified immunity to apply. *Id.* at 429. To determine whether an official is alleged to have violated "clearly established" law, courts in the Fourth Circuit "first look to cases from the Supreme Court, [the Fourth Circuit] Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017).

Here, qualified immunity does not protect Sgt. Vanskiver and Officer Gilpin from the well-pleaded Eighth Amendment claims in Counts I and II because it was clearly established on August 31, 2021, that the physical and sexual abuse of a prisoner violates the prisoner's Eighth Amendment rights. *See id.* at 102–06 (finding prisoners' Eighth Amendment "right not to be assaulted by their captors[,]" particularly "when [they] have not engaged in wrongdoing, are restrained and compliant and posing no physical threat[,]" to be clearly established).

Therefore, the Court shall deny Defendants' motion to dismiss as to Counts I and II.

### E. First Amendment Retaliation

In Count III of the Second Amended Complaint, Plaintiff asserts claims of retaliation in violation of the First Amendment against all Defendants. Defendants contend that Plaintiff's allegations are conclusory and lack specificity as to any individual defendant. ECF 51-1 at 18–19. Plaintiff argues that the Second Amended Complaint describes specific acts of retaliation and that pleading certain facts "upon information and belief" is permissible because Plaintiff cannot determine which individual defendant did what without discovery. ECF 66 at 15–18. The Court finds the facts in the Second Amended Complaint insufficient to state a plausible First Amendment retaliation claim against any of the Defendants.

"To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citation modified). "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Jones v. Solomon*, 90 F.4th 198, 214 (4th Cir. 2024) (citation omitted). The retaliatory conduct "must present more than a '*de minimis* inconvenience.'" *Meek-Freeman v. Moore*, Civ. No. DLB-24-444, 2025 WL 2781640, at *8 (D. Md. Sept. 30, 2025) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)). "In the prison context," the Fourth Circuit treats retaliation claims "with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir. 1994)).

Plaintiff filed administrative complaints and grievances in connection with the August 31, 2021, incident, which is conduct that the First Amendment protects. *See Riddle v. Wilson*, No. 1:24-CV-00115-GCM, 2025 WL 2484272, at *9 (W.D.N.C. Aug. 27, 2025) (citing *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 540 (4th Cir. 2017)); *Patton v. Kimble*, 717 Fed. App'x 271, 272 (4th Cir. 2018)) ("Inmates . . . have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them."). Still, Plaintiff fails to state any plausible claim that any Defendant took an adverse action against him as a result of his protected activities.

Plaintiff does not allege a plausible First Amendment retaliation claim against Officer Crowe. Plaintiff alleges that, "[u]pon information and belief," he was stabbed on December 23, 2021, because Officer Crowe provided "access or information" to his assailants. *Id.* ¶ 27. "But because a complaint must plausibly state a claim, using 'upon information and belief' as a pleading device survives a motion to dismiss only where 'the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) (quoting *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014)); *see also Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 544 (D. Md. 2023) (citation omitted). Plaintiff may lack access to details as to what Crowe said or did to give his assailants "access or information" in retaliation for his protected activities, he must allege facts supporting his belief that Crowe provided access or information to his assailants and that he did so because of Plaintiff's protected activities. Plaintiff's basis for that belief is not peculiarly within the possession of Crowe. Without facts to support Plaintiff's belief, the Second Amended Complaint fails to raise Plaintiff's right to relief against Crowe "above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiff also fails to state a plausible retaliation claim against Sgt. Vanskiver because Plaintiff does not allege a particular action by Sgt. Vanskiver in response to Plaintiff's protected activities that was likely to deter the exercise of First Amendment rights. Plaintiff alleges that Sgt. Vanskiver attempted to coerce him into recanting his complaints about the August 31, 2021, incident "by offering better housing conditions, electronics, and other privileges." *Id.* ¶ 28. That conduct, as pleaded, was not adverse to Plaintiff. Sgt. Vanskiver's offer, by itself, could not plausibly place such pressure on a person of ordinary firmness that the person is likely deterred from pursuing administrative complaints.

Plaintiff's other allegations of retaliation are insufficiently particularized. "Courts have been critical of complaints that fail to isolate the allegedly unconstitutional acts of each defendant, or that make only categorical references to 'Defendants[.]'" *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (citation modified). The Fourth Circuit requires "'specific factual allegations for each defendant,' because only such allegations provide 'fair notice to *that* defendant of the plaintiff's claim and underlying factual support.'" *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) (quoting *Langford*, 62 F.4th at 125). On the other hand, the Fourth Circuit does not "categorically foreclose the possibility that a complaint that makes allegations collectively against 'Defendants' may sometimes survive a motion to dismiss." *Langford*, 62 F.4th at 126. "[A]t this early stage in the litigation, a plaintiff will not come to court fully armed with the requisite facts to prove their case." *Id.* Nevertheless, the plaintiff must plead "sufficient facts to allow the court to infer liability as to *each* defendant." *Id.* (citing *Iqbal*, 556 U.S. at 676); *see also id.* at 125–127 (affirming dismissal where plaintiff alleged that he brought attention of a health issue to "Defendants" collectively, but did not allege facts suggesting that defendant warden, case manager, and unit manager knew about his poor health, or that defendant nurses treated or declined to treat him, saw him, or were working on the days in question); *Rice*, 172 F.4th at 432–33 (reversing denial of dismissal where plaintiff's allegations "treated the sixteen deputy sheriffs . . . as an undifferentiated collective" and "purported to attribute knowledge that one officer should have gained, or acts that another officer may have committed, to all").

Here, apart from Officer Crowe and Sgt. Vanskiver, Plaintiff does not identify which Individual Defendants encouraged gang violence against him, ECF 37 ¶¶ 24, 26, 31, 38; denied him medical care and hygiene supplies, *id.* ¶¶ 29, 33; tampered with or withheld his legal mail, *id.* ¶¶ 29, 33; encouraged inmates to throw feces at him, *id.* ¶¶ 29, 32, 37; ordered him to bark like a

dog, *id.* ¶¶ 29, 32, 37; or attempted to coerce him by offering inducements or threatening him, *id.* ¶¶ 28, 34, 36, 39–40. Plaintiff's allegations against "Defendants" collectively do not identify what role each defendant played in the alleged campaign of retaliation and therefore fail to provide fair notice to Defendants about the factual grounds for Plaintiff's retaliation claims against them. *See Rice*, 172 F.4th at 432–33; *Langford*, 62 F.4th at 125–26. Nor do Plaintiff's collective allegations based upon "information and belief" satisfy the pleading requirement. *See, e.g.*, ECF 37 ¶¶ 27, 32, 36–40. Allegations relying on "information and belief" survive dismissal only when the relevant facts are uniquely within the defendant's control or supporting facts make the defendant's culpability a plausible inference. *See Stone*, 400 F. Supp. 3d at 341; *Aarow Elec. Sols.*, 693 F. Supp. 3d at 544. Plaintiff argues that he does not have access to the evidence necessary to determine which defendants passed information on to gang members, denied Plaintiff access to medical care and hygiene supplies, tampered with his legal mail, or encouraged other prisoners to throw feces at him. ECF 66 at 17. However, Plaintiff still has the burden to demonstrate entitlement to relief by alleging facts from which the Court can infer that a particular defendant is liable, even if discovery may be required to provide evidence to support those allegations. The Second Amended Complaint does not contain such allegations.

The Court shall therefore grant Defendants' motion to dismiss Count III.

**F. Eighth Amendment Failure to Protect**

In Count IV of the Second Amended Complaint, Plaintiff asserts Eighth Amendment failure-to-protect claims against all Defendants based on their deliberate indifference to threats of violence and violent assaults committed against Plaintiff, including a stabbing by gang members on December 23, 2021. Defendants argue that Plaintiff does not allege that any defendant was aware of, or present during, the December 23, 2021, stabbing by gang members, and that the allegation that Officer Crowe "provided access or information to the assailants" is not sufficiently

specific. ECF 51-1 at 19–21. According to Plaintiff, the Second Amended Complaint alleges that he reported the August 31, 2021, assault by correctional officers to Warden Nines and Security Chief Stotler, who did not take any measures to protect Plaintiff in response. ECF 66 at 18. He also contends that he told Stotler of "each instance of abuse or retaliation," but Stotler did not act to stop the harm. *Id.* As explained below, the Court finds the Second Amended Complaint sufficient to state plausible failure-to-protect claims against Sgt. Vanskiver, Officer Gilpin, Warden Nines, and Security Chief Stotler, but not against Officer Crowe or Warden Arnold.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates[.]" *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish constitutional liability for failure to protect in violation of the Eighth Amendment, a plaintiff must satisfy a two-part inquiry with both objective and subjective components. *Id.* at 834. Objectively, the prisoner "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury,' or a substantial risk thereof." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

As to the subjective component, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation modified). The prison official must have actual knowledge of, and must disregard, "an excessive risk to inmate health or safety[.]" *Id.* at 837. This standard may be satisfied circumstantially with a showing that "a substantial risk of serious harm"

to the plaintiff was "so obvious that it had to have been known" and that a prison official subjectively disregarded the risk. *Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019), *as amended* (May 6, 2019) (quoting *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011), and *Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015)). Still, "deliberate indifference is a very high standard—a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015); *see also Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("'[M]ere negligence' won't meet this standard[.]") (citation omitted); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the deliberate indifference standard as "exacting").

First, the Second Amended Complaint states plausible failure-to-protect claims against Sgt. Vanskiver and Officer Gilpin. Both officers were present during—and are alleged to have participated in—the physical and sexual assault that occurred on August 31, 2021, which resulted in "serious or significant physical or emotional injury" to Plaintiff. *Danser*, 772 F.3d at 346–47. Allegations that these officers participated in the assault demonstrates, at least, "deliberate indifference" to Plaintiff's health and safety, or an even more culpable mental state. *Farmer*, 511 U.S. at 834; *see also Gonzalez v. Waterbury Police Dep't.*, 199 F. Supp. 3d. 616, 622–23 (D. Conn. 2016) (citation modified) (allowing plaintiff to "proceed under the alternate theories of direct participation and failure to intervene" where "the acts complained of by the plaintiff, if true, . . . are likely to have prevented plaintiff from identifying which of [the] defendant officers specifically engaged in the bad acts").

Second, the Second Amended Complaint states plausible failure-to-protect claims against Warden Nines and Security Chief Stotler. Plaintiff reported the August 31, 2021, assault to both of these officials, but these officials deemed the assailants' actions "appropriate" and failed to take measures to protect Plaintiff from further assaults by correctional officers. ECF 37 ¶ 22. Thereafter, correctional officers assaulted and injured Plaintiff again, using mace, allegedly to celebrate the prior assault. *Id.* ¶ 25. In addition, Plaintiff alleges that Stotler was informed of "each instance of abuse and retaliation" Plaintiff suffered "but took no action to prevent or stop the harm." *Id.* ¶ 30. As described in Part I.A *supra*, Plaintiff alleges that several such instances of violence took place over the years since he filed administrative complaints regarding the August 31, 2021, assault. *Id.* ¶¶ 24–29, 31–40. "[A] prison official's response to a known threat to inmate safety must be reasonable." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (citation omitted) (finding deliberate indifference where defendant "had been exposed to information" about "longstanding" or "pervasive" risks of serious harm). Drawing reasonable inferences in Plaintiff's favor, the Court finds the allegations in the Second Amended Complaint sufficient to plead Nines and Stotler's knowledge of a substantial risk of serious harm to Plaintiff and their disregard of that risk in failing to respond reasonably to known threats. And qualified immunity does not apply because Plaintiff had a well-established right to be protected from violence under the Eighth Amendment. *Danser*, 772 F.3d at 346 (citing *Farmer*, 511 U.S. at 833–35). It was well-established that Nines and Stotler were required to "take reasonable measures to guarantee" Plaintiff's safety, *Farmer*, 511 U.S. at 832 (citation omitted), and they allegedly failed to do so.

However, the Second Amended Complaint fails to state plausible failure-to-protect claims against Warden Arnold and Officer Crowe. Plaintiff does not allege that he ever informed Warden Arnold about any of the violence committed against him or any substantial risk of future attacks.

*Cf. Blankumsee v. Dep't of Corrs.*, Civ. No. PWG-13-2507, 2014 WL 3697959, at *9 (D. Md. July 22, 2014) (granting summary judgment to defendants where plaintiff "provide[d] no evidence to support his allegations that he informed prison officials of his alleged danger"). Plaintiff alleges only that "Warden Arnold succeeded Warden Nines and, upon information and belief, was aware of and/or participated in the conduct alleged since he assumed that role on or about January 2024." ECF 37 at 1 n.1. These speculative and conclusory allegations about what Warden Arnold knew are insufficient to plead actual knowledge of the risk of harm Plaintiff faced. As to Officer Crowe, Plaintiff alleges upon information and belief that this officer provided "access or information" to gang members within the prison who stabbed Plaintiff on December 23, 2021. *Id.* ¶ 27. But Plaintiff does not allege facts to support any reasonable inference that, in providing this unspecified "access or information" to the assailants, Officer Crowe knew that he was placing Plaintiff at any substantial risk of serious harm.

Accordingly, the Court shall dismiss Count IV as to Warden Arnold and Officer Crowe but sustain this count against the remaining Individual Defendants.

**G. Supervisory Liability**

In Count V of the Second Amended Complaint, Plaintiff asserts claims of supervisory liability against Warden Nines, Warden Arnold, and Security Chief Stotler for excessive force, sexual assaults, retaliation, and failure to protect by inferior officers at NBCI. Defendants argue that Plaintiff's generalized allegations do not suggest that Nines, Arnold, or Stotler were personally involved in any constitutional violations, and the allegations do not identify any particular actions (outside of the August 31, 2021, incident) that establish a pervasive pattern of subordinate misconduct. ECF 51-1 at 21–23. Defendants also argue that Plaintiff fails to identify evidence of deliberate indifference or of a causal connection between any potential indifference and his injuries. *Id.* at 23–25. In opposition to the motion to dismiss Count V, Plaintiff points to allegations

in the Second Amended Complaint that he directly reported the August 31, 2021, assault to Warden Nines and Security Chief Stotler and that the supervisors "maintained policies, customs, or practices that permitted" subordinate misconduct. ECF 66 at 18–20 (quoting ECF 37 ¶ 70). He further argues that discovery about prior complaints, investigations, and disciplinary actions is required to establish a pervasive pattern of misconduct at NBCI. *Id.* at 19–20. The Court finds the facts in the Second Amended Complaint adequate to state a plausible supervisory liability claim against Stotler, but not against Nines or Arnold.

In a suit arising under 42 U.S.C. § 1983, liability attaches only upon a defendant's personal participation in the violation of the plaintiff's federal rights; the doctrine of respondeat superior generally does not apply. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To state a claim under § 1983 based on supervisory liability for a subordinate's conduct, a plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

"[E]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread," and plaintiffs must show that the offending conduct "has been used on several different occasions." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). "To prove 'deliberate indifference' under the second element, the plaintiff typically must show a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Timpson*, 31 F.4th at 258 (quoting *Slakan*, 737 F.2d at 373). "Finally, under the third element, causation is established when the plaintiff proves 'an affirmative causal link'—a concept quasi-analogous to proximate cause—between the supervisor's inaction and the harm suffered." *Id.* (quoting *Slakan*, 737 F.2d at 376). A failure-to-protect claim focuses on whether the defendant knew of and disregarded a substantial risk of harm to the plaintiff, *Farmer*, 511 U.S. at 832–34, whereas a supervisory liability claim asks whether a defendant supervisor's deliberate indifference to a "pervasive and unreasonable risk of constitutional injury" from a subordinate's conduct caused the plaintiff's injury, *Shaw*, 13 F.3d at 799.

Plaintiff fails to allege a plausible claim for § 1983 supervisory liability against Warden Nines and Warden Arnold. He alleges that he reported one assault by subordinate officers—the August 31, 2021, incident—to Warden Nines, ECF 37 ¶ 22, and does not allege that he reported any official misconduct to Warden Arnold, *id.* at 1 n.1. The allegations in the Second Amended Complaint do not support any reasonable inference that Nines and Arnold had actual or constructive knowledge of "pervasive" or "widespread" misconduct by subordinate officers at NBCI. Plaintiff's bare allegation that they maintained policies that facilitated such misconduct is insufficient, even at the motion-to-dismiss stage, because Plaintiff does not plead any facts support this conclusory statement. *See, e.g.*, *Twombly*, 550 U.S. at 555.

As to Security Chief Stotler, Plaintiff alleges that he reported the August 31, 2021, incident to Stotler, ECF 37 ¶ 22, and that Stotler "was notified of each instance of abuse or retaliation but took no action to prevent or stop the harm[,]" *id.* ¶ 30. Drawing reasonable inferences in Plaintiff's favor, these allegations suggest that Stotler knew about a pervasive and unreasonable risk to Plaintiff from correctional officers and other inmates, and that Stotler exhibited deliberate indifference by failing to respond reasonably to any of these instances. Furthermore, Plaintiff plausibly alleges that Stotler's failure to curb subordinate misconduct "created an environment in which correctional staff could act with impunity, retaliate against inmates for protected conduct, and conceal evidence of misconduct, directly contributing to the harms suffered." ECF 37 ¶ 44. Viewing the allegations in the light most favorable to Plaintiff, they support a reasonable inference that Stotler's inaction resulted in further injuries to Plaintiff. And, as discussed above, qualified immunity does not protect Stotler's conduct because the U.S. Supreme Court clearly established that prison officials have a duty to take reasonable measures to protect the safety of inmates. *See supra* Part IV.F; *Farmer*, 511 U.S. at 832 (citation omitted).

Accordingly, the Court shall dismiss Count V as to Warden Nines and Warden Arnold but sustain Count V as to Security Chief Stotler.

**H. Battery**

In Count VI of the Second Amended Complaint, Plaintiff asserts a claim of battery under Maryland common law against all Defendants. Defendants argue that the Maryland Tort Claims Act ("MTCA") grants immunity to Individual Defendants as state employees for state-law tort claims committed without malice or gross negligence, and Plaintiff has failed to plead that Individual Defendants acted with those mental states. ECF 51-1 at 25–28. They also argue that the State's waiver of immunity in the MTCA applies only in Maryland state courts. *Id.* at 28–29.

Defendants further argue that Plaintiffs' battery claims are not supported by individualized acts, apart from those against Sgt. Vanskiver and Officer Gilpin. *Id.* at 29–31.

Plaintiff contends that the allegations about Sgt. Vanskiver and Officer Gilpin's conduct during the August 31, 2021, incident constitute battery. ECF 66 at 21. He further argues that the other defendants "facilitated attacks by other inmates, denied medical care, and interfered with [his] safety." *Id.* at 22. According to Plaintiff, immunity under the MTCA does not apply because he plausibly alleges that Individual Defendants acted with malice or gross negligence. *Id.* at 20–21.

The Court finds that the Second Amended Complaint states plausible battery claims against Vanskiver and Gilpin, and these Defendants are not immune because the facts alleged in the Second Amended Complaint suggest that they acted with malice. But Count VI shall be dismissed as to the remaining Defendants for failure to state a claim.

Under Maryland law, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999) (citing Restatement (Second) of Torts § 13 (A.L.I. 1965)). "A battery may occur through a defendant's direct or indirect contact with the plaintiff." *Id.* at 1099–1100.

Maryland recognizes a common-law immunity that applies to public officials, including prison guards and correctional officers, who "perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." *Cooper v. Rodriguez*, 118 A.3d 829, 848 & n.13 (Md. 2015) (quoting *Houghton v. Forrest,* 989 A.2d 223, 227 (Md. 2010)). Public officials are "not liable for . . . battery or other tortious conduct performed during the course of [their] official duties unless [they] acted with actual malice," *Goehring v. United States*, 870 F. Supp. 106, 108 (D. Md. 1994), or with gross negligence, *Cooper*, 118 A.3d at 854.

Additionally, the doctrine of sovereign immunity "prohibits suits against the State [of Maryland] or its entities absent its consent." *Magnetti v. Univ. of Md.*, 937 A.2d 219, 224 (Md. 2007). The MTCA waives the State's sovereign immunity for "tortious acts committed by State personnel acting within the scope of their public duties without malice or gross negligence, up to a monetary limit." *State v. Young*, 359 A.3d 282, 290 (Md. 2026) (citing Md. Code Ann., State Gov't ("SG") § 12-104(a)(2), and Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-522(a)(5)). "In partially waiving the State's sovereign immunity for certain tort actions committed by State personnel, the General Assembly granted corresponding immunity to those State personnel." *Id.* (citing CJP § 5-522(b)). "For torts that do not fall within the scope of the MTCA waiver, the State personnel remain responsible and subject to individual liability, and the State retains its sovereign immunity." *Id.* The scope of this immunity for State personnel "does not extend to tortious actions committed with malice or gross negligence." *Walker v. Maryland*, Civ. No. MJG-16-3136, 2017 WL 3730349, at *9 (D. Md. Aug. 30, 2017).

The Second Amended Complaint states plausible claims for battery against Sgt. Vanskiver and Officer Gilpin based on the allegations of physical and sexual abuse on August 31, 2021. Plaintiff alleges that Sgt. Vanskiver slapped and squeezed Plaintiff's face, and that the officers excessively tightened his handcuffs, squeezed his penis tightly, and sprayed mace onto his genital area. ECF 37 ¶¶ 17–19. The allegations of these unjustified physical and sexual contacts permit a reasonable inference that Sgt. Vanskiver and Officer Gilpin acted maliciously, so neither defendant is immune.

The Second Amended Complaint does not allege that any of the remaining Individual Defendants—Warden Nines, Security Chief Stotler, Officer Crowe, and Warden Arnold—made harmful and offensive contact, either directly or indirectly, with Plaintiff. Recognizing that "the

battery claim is strongest as to Vanskiver and Gilpin," Plaintiff suggests that "the allegations of concerted action and facilitation state a plausible basis for liability against the remaining Defendants under theories of aiding and abetting or concert of action." ECF 66 at 22. These theories, however, are not reflected in the Second Amended Complaint and are not supported by the facts alleged therein. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation omitted). And the Second Amended Complaint does not include any enough facts to support a reasonable inference that Nines, Stotler, Crowe, or Arnold acted in concert with anyone who made harmful or offensive contact with Plaintiff or that they facilitated any such contact. Plaintiff's vague allegation that Crowe provided unspecified "access or information" to gang members who ended up stabbing Plaintiff is inadequate to support a reasonable inference that Crowe acted maliciously in concert with, or to assist, the assailants. ECF 37 ¶ 27.

Accordingly, the Court will deny the motion to dismiss Count VI as to Sgt. Vanskiver and Officer Gilpin, but grant it as to Warden Nines, Security Chief Stotler, Officer Crowe, and Warden Arnold.

### I. Civil Conspiracy

In Count VII of the Second Amended Complaint,[9] Plaintiff asserts a claim against all Defendants for conspiracy to violate Plaintiff's constitutional rights. Defendants argue that Plaintiff's allegations do not demonstrate that Defendants had a common, agreed-upon plan, especially given that Plaintiff does not identify particular dates or times, conspirators, or acts that were the result of a conspiracy. ECF 51-1 at 31–32. Plaintiff contends that the Second Amended Complaint pleads facts allowing for the inference of coordinated conduct among Defendants,

[9] This count is incorrectly numbered VIII in the pleading.

pointing to the obstruction of the camera before the August 31, 2021, assault, and Defendants' collective actions following the assault to retaliate against Plaintiff and silence him. ECF 66 at 22. The Court finds the Second Amended Complaint sufficient to state a plausible civil conspiracy claim against Sgt. Vanskiver and Officer Gilpin, but not against any other Individual Defendants.

"To establish a civil conspiracy under [42 U.S.C.] § 1983, [a plaintiff] must present evidence that the [defendants (1)] acted jointly in concert and [(2)] that some overt act was done in furtherance of the conspiracy which [(3)] resulted in [the plaintiff's] deprivation of a constitutional right[.]" *O.W. v. Carr*, 172 F.4th 337, 355 (4th Cir. 2026), *cert. denied*, No. 26-174, 2026 WL 3053436 (U.S. Oct. 13, 2026) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A civil conspiracy under § 1983 requires the alleged conspirators to share "the same conspiratorial objective[]" and "a mutual understanding to try to accomplish a common and unlawful plan." *Id.* (quoting *Hinkle*, 81 F.3d at 421).

The Second Amended Complaint sets forth sufficient facts to support a reasonable inference that Sgt. Vanskiver and Officer Gilpin "acted jointly in concert" with "a mutual understanding" to deprive Plaintiff his rights to be free of unjustified assault and to be protected from violence while in custody. *Id.* (quoting *Hinkle*, 81 F.3d at 421). Plaintiff alleges that, on August 31, 2021, he was taken to room where Vanskiver and Gilpin were present with a surveillance camera obstructed by an object, and then these two officers proceeded to abuse Plaintiff physically and sexually. ECF 37 ¶¶ 15–19. Viewed in the light most favorable to Plaintiff, the foregoing facts are sufficient to support a reasonable inference that Vanskiver and Gilpin shared a common plan and objective to violate Plaintiff's rights and a mutual understanding to execute that plan to achieve the objective. Further, both officers are alleged to have participated in

the abuse and thus engage in overt acts in furtherance of the conspiracy. The Court finds these facts adequate to state a plausible § 1983 civil conspiracy claim against Vanskiver and Gilpin.

However, Plaintiff fails to allege any facts to suggest that any other Individual Defendants joined the same agreement as Sgt. Vanskiver and Officer Gilpin or any other agreement to violate Plaintiff's constitutional rights. Plaintiff alleges that "Defendants" retaliated against him for submitting complaints about the August 31, 2021, assault, humiliated and stigmatized him as a "snitch" among other inmates, and threatened and pressured him into recanting. ECF 37 ¶¶ 24, 26, 31, 32, 35, 36, 38. But Plaintiff's collective allegations against "Defendants" fail to describe how each Individual Defendant participated in the alleged campaign of retaliation and thus fail to support a reasonable inference that Individual Defendants shared an unlawful objective and took actions in furtherance of that objective. The Court cannot infer from Plaintiff's collective allegations that any particular defendant joined an agreement to deprive him of constitutional rights. *See Rice*, 172 F.4th at 432; *Langford*, 62 F.4th at 125. Moreover, as explained in Part IV.E *supra*, Plaintiff fails to state any plausible First Amendment retaliation claim against any of the Individual Defendants. Failure to state an underlying claim for deprivation of a constitutional right requires dismissal of the corresponding § 1983 civil conspiracy claim. *See Massey v. Ojaniit*, 759 F.3d 343, 358 (4th Cir. 2014).

Even where Plaintiff lodges particularized allegations against specific Individual Defendants, the allegations against Sgt. Vanskiver and Officer Gilpin are the only ones that support any reasonable inference of an agreement to violate Plaintiff's rights. Plaintiff alleges that Officer Crowe provided gang members with unspecified "access or information[,]" and, as a result, these gang members stabbed Plaintiff. ECF 37 ¶ 27. But Plaintiff does not allege facts suggesting that Crowe entered into an agreement with Vanskiver, Gilpin, or any other defendant to retaliate against

him for complaining about the August 31, 2021, assault or to violate his rights in any other way. Similarly, Plaintiff does not allege any facts suggesting that Security Chief Stotler was deliberately indifferent to his complaints because Stotler had an agreement with other defendants to achieve any unlawful objective. Without factual allegations from which the Court can infer the existence of such an agreement, the civil conspiracy claims against Crowe, Stotler, Nines, and Arnold cannot stand. *See Ruttenberg v. Jones*, 283 Fed. App'x 121, 132 (4th Cir. 2008) (affirming dismissal where plaintiff made "nothing beyond conclusory allegations of conspiracy").

To the extent that Plaintiff alleges civil conspiracy under Maryland law, that claim fails. "Under Maryland law, civil conspiracy provides a means of holding a co-conspirator liable for acts committed in furtherance of the conspiracy by another member." *Woods v. Stewart Title Guar. Co.*, Civ. No. CCB-06-0705, 2006 WL 2135518 (D. Md. July 28, 2006) (citing *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 485 (Md. 2006)). "The plaintiff must prove an unlawful agreement, the commission of an overt act in furtherance of the agreement, and that as a result, the plaintiff suffered actual injury." *Mackey*, 892 A.2d at 485 (citation omitted). But "[t]he unlawful agreement is not actionable by itself; rather, the '[t]ort actually lies in the act causing the harm' to the plaintiff." *Id.* (citation omitted); *see also Woods*, 2006 WL 2135518, at *4 ("[T]he agreement itself is not actionable; instead, the underlying tort is considered to be the act which caused harm."). Therefore, in Maryland, "civil conspiracy will not support a separate cause of action, and it is improper pleading to allege conspiracy in a separate count." *Seneca One Fin., Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 466 (D. Md. 2016) (quoting *Woods*, 2006 WL 2135518, at *4) (citation modified).

Accordingly, the Court shall dismiss Count VII as to Officer Crowe, Security Chief Stotler, Warden Nines, and Warden Arnold. Count VII shall be sustained as a § 1983 civil conspiracy claim against Sgt. Vanskiver and Officer Gilpin only.

### J. Injunctive Relief

The Second Amended Complaint states, in its prayer for relief, that Plaintiff seeks "appropriate injunctive relief to prevent further harm to [Plaintiff]," including "transfer to different facility or region, no-contact orders against specific Defendants, and any other measures necessary to ensure [Plaintiff's] safety and access to legal resources." ECF 37 at 13. Defendants argue that Plaintiff is not entitled to injunctive relief because federal courts may issue injunctions against state prisons concerning prison management only in limited circumstances. ECF 51-1 at 14–15. They also argue that Plaintiff has not shown that he would suffer irreparable harm without preliminary injunctive relief. *Id.* at 15–16.

Plaintiff argues that the Second Amended Complaint alleges continuing retaliation through at least January 2025, which may warrant injunctive relief. ECF 66 at 14 (citing ECF 37 ¶ 40). He also argues that evidence obtained since the filing of the Second Amended Complaint, namely, two findings by administrative law judges, show that Plaintiff has suffered ongoing harm. *Id.* at 15.

To obtain permanent injunctive relief after succeeding on the merits of a civil action, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citations omitted). At this early stage of the case, the Court cannot determine whether Plaintiff will be able to justify any request for a permanent injunction. The Court declines to dismiss or strike his request for injunctive relief from the Second Amended Complaint's prayer for relief.

## V. DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendants request summary judgment under Rule 56 in the alternative to dismissal under Rule 12(b)(6) and offer facts outside Plaintiff's pleading, supported by evidence attached to Defendants' motion, for the Court's consideration. This evidence includes the Request for Administrative Remedy that Plaintiff submitted in connection with the August 31, 2021, incident, ECF 51-3; Plaintiff's appeal of the response to that request, ECF 51-4; the Intelligence and Investigation Division ("IID") investigative report of the August 31 incident, ECF 51-5; a declaration indicating that Plaintiff did not file a grievance with the Incarcerated Individual Grievance Office in connection with his administrative remedy request, ECF 51-6; prison-disciplinary records about Plaintiff and an audio recording of the August 31 incident, ECF 51-7; and Plaintiff's medical records, which were filed under seal, ECF 51-8 & 52. Defendants argue that the IID report found that Plaintiff's claims were unsubstantiated and that statements Plaintiff made to medical personnel do not corroborate his claims. ECF 51-1 at 7–10.

Plaintiff argues that summary judgment is premature and should be denied or deferred under Rule 56(d) because he has not had an adequate opportunity to conduct discovery. ECF 66 at 7–8. Attached to Plaintiff's opposition is a Rule 56(d) declaration from Plaintiff's counsel explaining why Plaintiff requires further discovery to respond to the materials attached to Defendants' motion. *See* ECF 66-1. To present facts opposing summary judgment, Plaintiff's counsel contends that he needs access to (1) video and audio evidence from the August 31, 2021, incident; (2) the complete IID investigative file concerning Plaintiff's claims; (3) Plaintiff's complete medical records; (4) records about Plaintiff's stabbing, institutional history, grievances, and efforts to induce him to recant his claims; (5) records of staff misconduct at NCBI, communications among staff members about Plaintiff, NCBI policies, and training records; and

(6) depositions of Sgt. Vanskiver, Officers Gilpin and Crowe, the IID investigator, Wardens Nines and Arnold, and Security Chief Stotler. ECF 66-1 at 4–10. In reply, Defendants argue that Plaintiff has access to the records they submitted in support of their motion and that Plaintiff received some discovery responses after the filing of the Rule 56(d) declaration. ECF 78 at 1–4.

"[S]ummary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir.1996) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). "Discovery is usually essential in a contested proceeding prior to summary judgment because '[a] party asserting that a fact . . . is genuinely disputed must support the assertion by,' inter alia, 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" *Greater Balt. Ctr.*, 721 F.3d at 280 (quoting Fed. R. Civ. Proc. 56(c)(1)(A)). "[B]y its very nature, the summary judgment process presupposes the existence of an adequate record." *Id.* (quoting *Doe v. Abington Friends Sch.,* 480 F.3d 252, 257 (3d Cir. 2007)). Accordingly, converting a motion to dismiss to a summary judgment motion is generally not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Plaintiff has demonstrated that he requires further discovery to contest the evidence attached to Defendants' motion. For example, Plaintiff requires discovery related to the allegedly obstructed video camera and available footage from the August 31, 2021, incident to rebut Defendants' reliance on an audio recording of the incident. Although Defendants provided a copy of the audio to Plaintiffs, ECF 78 at 2, access to contemporaneous, unedited video footage would allow Plaintiff to determine the completeness of that audio recording. Additionally, Plaintiff did

not have the opportunity to depose any of the Individual Defendants at the time he filed his opposition. ECF 66-1 ¶¶ 24–25. Given the parties' factual disputes and potential lack of video evidence, depositions of Individual Defendants are likely necessary for Plaintiff to effectively contest Defendants' version of events.

Plaintiff did not have an opportunity to conduct reasonable discovery before filing his opposition to Defendants' motion. Defendants filed their motion on June 2, 2026, and Plaintiff did not receive "any substantive discovery responses from any Defendant" by July 2, when Plaintiff was required to respond to the motion. ECF 66-1 ¶¶ 6–7; *see* ECF 65 (Order setting July 2 deadline). Plaintiff received some discovery responses after the Rule 56(d) declaration was filed. ECF 78 at 1. However, those responses were insufficient because Plaintiff received them too late to use in opposition to Defendants' motion. *See McCray*, 741 F.3d at 484 (considering what information plaintiff had access to "[a]t the time of the summary judgment motion"); *Gay v. Wall*, 761 F.2d 175, 178–79 (4th Cir. 1985) (summary judgment was inappropriate where "plaintiff had barely begun discovery," his interrogatories were "only partially answered," and "defendants claimed that much requested discovery was privileged").

Therefore, Court shall defer ruling on any motion for summary judgment until the parties complete reasonable discovery.

## VI. CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendants' Motion to Seal (ECF 53), GRANT Defendants' Motion for Extension of Time to File (ECF 74), DENY Plaintiff's Motion for Leave to File Surreply (ECF 81), and GRANT IN PART AND DENY IN PART Defendants' Motion to Dismiss (ECF 51). The Court shall DISMISS Count III as to all Defendants; Count IV as to Officer Crowe and Warden Arnold; Count V as to Warden Nines and Warden Arnold, but

not as to Security Chief Stotler; Count VI as to all Defendants except Sgt. Vanskiver and Officer Gilpin; and Count VII as to all Defendants except Sgt. Vanskiver and Officer Gilpin. A separate Order shall issue.

November 24, 2026
Date

/S/
Matthew J. Maddox
United States District Judge